IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

APR 0 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PETER DIMITROV MIRCHEV,<br><br>ELISHA ODHIAMBO ASUMO,<br><br>MICHAEL KATUNGI MPEIRWE,<br><br>and<br><br>SUBIRO OSMUND MWAPINGA,<br><br>*Defendants.* | Case No. 1:25-CR-102 (AJT)<br><br>Count 1: Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, Knowing, Intending, and Having Reasonable Cause to Believe that it would be Unlawfully Imported into the United States (21 U.S.C. §§ 959(a), 960(a)(3), 960(b)(1)(B), 963 and 18 U.S.C. § 2)<br><br>Count 2: Conspiracy to Possess Firearms, Including a Machinegun and Destructive Device, in Furtherance of a Drug Trafficking Crime (18 U.S.C. §§ 924(o) and 2)<br><br>Count 3: Conspiracy to Provide Material Support or Resources to a Designated Foreign Terrorist Organization (18 U.S.C. § 2339B)<br><br>Forfeiture Notice<br><br>**UNDER SEAL** |

## INDICTMENT

April 2025 Term — Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise specified:

## General Allegations

1. The Cartel de Jalisco Nueva Generación ("CJNG") is one of Mexico's most violent and prolific transnational criminal organizations, controlling vast swathes of Mexico through fear, bribery, violence, and intimidation.[1]

2. Formed in and around approximately 2011, the CJNG has expanded its operations outside of Mexico and now operates in South and Central America, Europe, Asia, Australia, Africa, and throughout the United States. The CJNG's primary criminal activity is illegal drug trafficking, particularly of cocaine, fentanyl, and methamphetamine.

3. The CJNG's prolific drug distribution network sources enormous quantities of cocaine from South American countries like Colombia, Peru, and Bolivia. The United States is the largest consumer of the cocaine that the CJNG imports to Mexico. This illegal drug trade generates billions of dollars in profits for the CJNG.

4. On February 20, 2025, the United States Secretary of State designated the CJNG as a Foreign Terrorist Organization under § 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under Executive Order 13224.

5. As part of their ongoing transnational criminal activity, Mexican drug cartels regularly engage in acts of violence. For example, the CJNG uses violence against local communities, journalists, and other organizations that it deems in opposition to its criminal activities in order to silence, intimidate, and control them. It also targets rival drug trafficking organizations for control of drug routes and territory. In addition, it has committed acts of violence against Mexican law enforcement and military personnel, such as attacks on military and police convoys and helicopters, and against government officials, including assassinations and attempted

---

[1] The CJNG is also known as the New Generation Cartel of Jalisco, Jalisco Cartel, and Jalisco New Generation Cartel.

assassinations. These acts of violence are made possible by, among other causes, the illegal and unlawful sale and transfer of military-grade weaponry to transnational criminal organizations.

6.      Arms sales to transnational criminal organizations like the CJNG are prohibited by virtually every country. One method used to attempt to stem the flow of weapons to groups like the CJNG is the use of import-export documentation, including documents known as End-User Certificates ("EUCs") and Delivery Verification Protocols ("DVPs").

7.      In obtaining a lawfully issued EUC, an entity seeking to purchase military-grade weaponry from an arms manufacturer in another country affirmatively documents who the intended user (i.e., "end-user") of the weapons would be. A DVP is obtained after the weapons transaction and documents that the intended end-user did in fact take possession of the purchased arms. Together, these documents catalogue the arms transaction from beginning to end so that law enforcement and arms control entities can monitor transactions and ensure that transnational criminal and terrorist organizations like the CJNG do not illegally acquire weaponry from foreign entities. However, despite the safeguards in place, most illegally trafficked weapons are manufactured legally by licensed manufacturers. Arms traffickers are able to import and export the weapons using either fraudulent, falsified, and/or corruptly obtained documentation that contains false information about the ultimate destination of the items.

## The Defendants

8.      **PETER DIMITROV MIRCHEV** ("**MIRCHEV**") is a Bulgaria-based international arms trafficker who has engaged in weapons trafficking for approximately 25 years.

9.      **ELISHA ODHIAMBO ASUMO** ("**ASUMO**") is a Kenyan national with a longstanding relationship with **MIRCHEV** who sources EUCs and DVPs from various African countries through bribery.

10.  **MICHAEL KATUNGI MPEIRWE ("MPEIRWE")** is a Ugandan national with connections to the Ugandan government who works with **ASUMO** in acquiring EUCs and DVPs in Africa. **MPEIRWE** is a Policy Advisor employed by the Government of Uganda. He previously worked as a Deputy Head of Mission for the Uganda High Commission and as a security logistics officer associated with the African Union Commission.

11.  **SUBIRO OSMUND MWAPINGA ("MWAPINGA")** is a Tanzanian national who works with **ASUMO** and **MPEIRWE** in acquiring EUCs and DVPs in Africa.

The Scheme

12.  From at least in and around September 2022 and continuing through the present, the exact dates being unknown and both dates approximate and inclusive, the defendants, **MIRCHEV, ASUMO, MPEIRWE,** and **MWAPINGA**, conspired to illegally and unlawfully supply military-grade weaponry, including machineguns, rocket launchers, grenades, night vision equipment, sniper rifles, anti-personnel mines, and anti-aircraft weapons, to Mexican drug cartels, and in particular, the CJNG. The defendants did so fully aware that the cartels, including the CJNG, intended to use these weapons in furtherance of criminal activity, particularly the illegal trafficking of large, multi-kilogram shipments of cocaine into the United States.

13.  The purpose of the conspiracy was for the defendants to financially enrich themselves by illegally arming the cartels, including the CJNG, in exchange for payment.

14.  In furtherance of this conspiracy, **MIRCHEV** engaged in a series of meetings with individuals claiming to represent the CJNG who were seeking to purchase large quantities of military-grade weaponry. In these meetings, **MIRCHEV** agreed to arrange, coordinate, and participate in illegal arms transactions to supply the CJNG with military-grade weaponry while avoiding detection by international and U.S. law enforcement.

15. After one of these meetings, **MIRCHEV** provided an arms brochure advertising weaponry for sale (the "Arms Brochure"). The Arms Brochure included advertisements for a variety of military-grade weaponry, including drones, surface-to-air missiles, rocket propelled grenades, air defense systems, and armored vehicles. Screenshots from this Arms Brochure are depicted below and on the following page:







16.     After providing the Arms Brochure, **MIRCHEV** agreed to supply the CJNG with a test shipment of AK-47 automatic assault rifles in exchange for payment.

17.     As stated above, any potential arms transaction between **MIRCHEV** and the CJNG would require an EUC, DVP, and other arms control documents. Accordingly, in furtherance of the conspiracy, **MIRCHEV** recruited **ASUMO** to corruptly obtain an EUC from an African nation that would falsely claim a different end-user for the weapons. **ASUMO**, in turn, recruited **MPEIRWE**, who recruited **MWAPINGA**. Together, **ASUMO**, **MPEIRWE**, and **MWAPINGA** obtained an EUC from the United Republic of Tanzania authorizing the importation of fifty (50) AK-47 automatic assault rifles by a Tanzanian arms company "for the Sole use of" the Tanzanian military. The EUC further certified that the weapons would "neither be re-exported nor delivered to any third party without prior written consent of the" government of Bulgaria. A redacted picture

of the corruptly obtained EUC provided by **ASUMO**, **MPEIRWE**, and **MWAPINGA** is depicted below:



**THE UNITED REPUBLIC OF TANZANIA**
**MINISTRY OF DEFENCE AND NATIONAL SERVICES**

**END USER CERTIFICATE**
MoD-EUSALW- // NIK/JVTZ-22/220323.

We hereby declare that products declared by the chart made by ▓▓▓▓ from ▓▓▓▓ Burgas, Bulgaria has to be received by the Ministry of Defence and National Services of the Government of the United Republic of Tanzania of ▓▓▓▓ Dodoma Tanzania from M/S JEVICE & ENGENEERING of ▓▓▓▓ Dar Es Salaam. The equipments at the below list will be imported into the United Republic of Tanzania under the Laws of the United Republic of Tanzania for the Sole use of Tanzania Peoples Defence forces and National Services and will neither be re-exported nor delivered to any third party without prior written consent of the **COMPETENT AUTHORITY OF THE GOVERNMENT OF BULGARIA**.

| Item No. | Product Description | Quantity |
|---|---|---|
| 1 | AK-47 | 50Pcs |
| 2 | 7.62x39 Cartridges | 140,000Pcs |

Signed at Dodoma this 13th Day of December 2022



**PERMANENT SECRETARY**
**MINISTRY OF DEFENCE**
**AND NATIONAL SERVICES**

18.   In and around October 2022, as an initial payment for the corruptly obtained EUC, approximately $5,000 was wired to a Kenyan bank account in **ASUMO's** name from a bank account located in the United States.

19.   In and around December 2022, approximately $30,000 was wired to the same Kenyan account in **ASUMO's** name from a bank account located in the United States. This payment represented the bulk of the fee for the corruptly obtained EUC.

20.   In and around March 2023, **ASUMO** and **MWAPINGA** both accepted thousands of dollars in payment for attending meetings regarding the planned arms deal in Cape Town, South

Africa. During one of these meetings, **ASUMO** and **MWAPINGA** explained that they had been working to provide a "paper trail," that is, an EUC that falsely stated the weapons that the defendants were conspiring to sell to Mexican drug traffickers were intended for use by the Tanzanian military. At a different meeting in Cape Town, **ASUMO** and **MWAPINGA** discussed the possibility of using East Africa as a transshipment point for cocaine.

21.   In and around November 2023, at the direction of **MIRCHEV** and as payment for the initial arms deal, approximately $37,977.53 was wired from a bank account in the United States to a Bulgarian bank account held in the name of a Bulgarian arms manufacturer associated with **MIRCHEV**.

22.   In and around April 2024, **MPEIRWE** attended a meeting in London regarding the planned arms deal. At this deal, **MPEIRWE** offered to illegally obtain firearms for future sale to the CJNG as part of a planned arms deal between the governments of Russia and Uganda. **MPEIRWE** also explained that he could use his connections throughout Africa and the Ugandan government to easily obtain EUCs for future arms deal in exchange for a 2% commission.

23.   In and around approximately July 2024, **MIRCHEV** and others exported the 50 AK-47 automatic assault rifles and accompanying magazines and ammunition from Bulgaria intending that they be received by the CJNG.

24.   After the seizure of the weapons, **ASUMO** obtained a DVP, purportedly signed by the Permanent Secretary for the Ministry of Defence National Services of the United Republic of Tanzania, reflecting that the Tanzanian military had received the weapons, even though it had not. A redacted screenshot of the false DVP provided by **ASUMO** is depicted on the following page:



25. The defendants continued to conspire to supply drug cartels with even more weaponry. For example, in and around October 2024, **MIRCHEV** discussed potentially supplying the CJNG with surface-to-air missiles, anti-aircraft drones, and the ZU-23 anti-aircraft weapon system, which is capable of firing 23x152mm rounds and is designed to shoot down low-flying targets, such as helicopters. **MIRCHEV** explained that the ZU-23 can "automatically" track targets and fires "high-explosive" rounds that "could put down helicopters."

26. These additional discussions eventually led **MIRCHEV** to create a proposed list of weaponry for the CJNG totaling approximately 53.7 million Euros (approximately 58 million U.S. dollars). A screenshot of this list is depicted on the following page:

9

| ARMEMENT LISTING WARFARE UNIT FULL EQUIPMENT | | | | | |
|---|---|---|---|---|---|
| | ITEM | QUANTIT | REMARKS | Price/Unit EUR | Total |
| ARMEMENT | AK47M | 2000 | Автомат Калашникова модернизирова | 1326 | 2652000 |
| | Chargers AK47M | 6000 | Kevlar reinforced | 16 | 96000 |
| | Spare Parts Kit | 2000 | | 1042 | 2084000 |
| | PKM | 60 | Пулемёт Калашникова | 6517 | 391020 |
| | RPG7-V2 Launchers | 68 | Ручной Противотанковый Гранатомёт | 5722 | 389096 |
| | Multiple Grenade Launche | 20 | | 5289 | 105780 |
| | Arsenal 40 mm UBGL-1 | 20 | | 1951 | 39020 |
| | SPG9 | 8 | СПГ-9 Копьё | 43180 | 345440 |
| | MIT 12,7 mm | 20 | Coyote | 46339 | 926780 |
| | Dragunov | 16 | Снайперская Винтовка системы Драгун | 7436 | 118976 |
| | Zu-23 | 4 | Antiaircraft gun ZU-23 with sight | 589339 | 2357356 |
| AMMUNITION | 7,62 x 39 mm | 9000000 | Steel Core | 0.72 | 6480000 |
| | 7,62 x 39 mm | 500000 | Blank | 0.51 | 255000 |
| | 7,62 x 39 mm | 1000000 | Lead Core | 0.78 | 780000 |
| | 7,62 x 54 mm | 1500000 | Steel Core | 1.46 | 2190000 |
| | 7,62 x 54 mm | 1000000 | Blank | 0.98 | 980000 |
| | RPG7-VM | 1000 | | 1169 | 1169000 |
| | 40x46 MM AP | 2000 | | 172 | 344000 |
| | 40x46 MM AC | 2000 | | 164 | 328000 |
| | OG9-VM | 408 | | 2227 | 908616 |
| | 12,7 x 99 | 102000 | | 7.78 | 793560 |
| | 12,7 x 108 | 102000 | | 7.34 | 748680 |
| | 9 x 19 mm | 1000000 | Parabellum | 0.53 | 530000 |
| | Dragunov Adapted 54R | 10008 | | 1.31 | 13110.48 |
| | 23x152mm | 10000 | HEI | 101.8 | 1018000 |
| | 23x152mm | 2000 | API | 96.1 | 192200 |
| EXTRAS | Blank shooting caps AK47 | 900 | | 4 | 3600 |
| | Blank Shooting caps PKM | 100 | | 6 | 600 |
| | Cleaning Kits | 1334 | | 55 | 73370 |
| | Night Vision Diana 45 | 60 | | 7155 | 429300 |
| | Opticals RPG7 | 50 | | 1128 | 56400 |
| | Drone | 5 | Option : Multispectrum Camera | 331450 | 1657250 |
| | Drone | 5 | Option : Multiple Grenade Launcher | 268450 | 1342250 |
| | Drone Mobile Command ce | 2 | 6 X 6 | | 0 |
| | Anti-Drone | 4 | | 4100000 | 16400000 |
| | Optix Guard | 4 | Cameras | 1879966 | 7519864 |
| TOTALS | | | | | 53718268.48 |

27.     For their part, **ASUMO**, **MPEIRWE**, and **MWAPINGA** agreed to again provide arms control documents designed to obscure that these weapons were in fact intended for the CJNG.

28.     The defendants' actions in furtherance of the conspiracy were done with the knowledge and intent to aid and abet cocaine trafficking into the United States, in particular by the CJNG. The defendants conspired to equip the CJNG with weapons and created a fraudulent paper trail so as to obfuscate their actions from law enforcement detection. They did so with the intent to assist the CJNG in protecting and furthering its prolific drug trafficking. They also sought, in exchange for profit, to equip the CJNG, a transnational criminal and foreign terrorist organization,

with military-grade weaponry despite knowing that the CJNG inflicts catastrophic suffering in support of its criminal activities.

## COUNT ONE

*(Conspiracy to Distribute 5 Kilograms or More of Cocaine, Knowing, Intending, and Having Reasonable Cause to Believe that it would be Unlawfully Imported into the United States)*

29.     The allegations contained in Paragraphs 1 through 28 of this Indictment are re-alleged and incorporated as if set forth here in their entirety.

30.     From at least in and around September 2022 and continuing through the date of this Indictment, in an offense begun and committed outside the jurisdiction of any particular state or district of the United States, including in the Republic of Bulgaria and elsewhere, the defendants,

**PETER DIMITROV MIRCHEV,**

**ELISHA ODHIAMBO ASUMO,**

**MICHAEL KATUNGI MPEIRWE,**

**and**

**SUBIRO OSMUND MWAPINGA,**

at least one of whom is expected to be brought first to and arrested in the Eastern District of Virginia, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to distribute and possess with intent to distribute, and to aid and abet the distribution and possession with intent to distribute, of five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a), 960(a)(3), and 960(b)(1)(B), and Title 18, United States Code, Section 2.

(In violation of Title 21, United States Code, Section 963 and Title 18, United States Code, Section 3238.)

## COUNT TWO

*(Conspiracy to Possess Firearms, Including a Machinegun and Destructive Device, in Furtherance of a Drug Trafficking Crime)*

31.     The allegations contained in Paragraphs 1 through 28 of this Indictment are re-alleged and incorporated as if set forth here in their entirety.

32.     From at least in and around September 2022 and continuing through the date of this Indictment, in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, including in the Republic of Bulgaria and elsewhere, the defendants,

**PETER DIMITROV MIRCHEV,**

**ELISHA ODHIAMBO ASUMO,**

**MICHAEL KATUNGI MPEIRWE,**

**and**

**SUBIRO OSMUND MWAPINGA,**

at least one of whom is expected to be brought first to and arrested in the Eastern District of Virginia, did knowingly and intentionally conspire to commit an offense under Title 18, United States Code, Section 924(c), that is, the defendants conspired to possess and to aid and abet the possession of firearms, including a machinegun and destructive device, in furtherance of a drug trafficking crime for which the defendants may be prosecuted in a court of the United States, that is, conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States, in violation of Title 21, United States Code, Sections 959(a) and 963, and Title 18, United States Code, Section 2.

(In violation of Title 18, United States Code, Sections 924(o) and 3238.)

## COUNT THREE

*(Conspiracy to Provide Material Support or Resources to a Foreign Terrorist Organization)*

33.     The allegations contained in Paragraphs 1 through 28 of this Indictment are re-alleged and incorporated as if set forth here in their entirety.

34.     From at least on or about February 20, 2025, and continuing through the date of this Indictment, in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, including in the Republic of Bulgaria, the United Republic of Tanzania, and elsewhere, the defendants,

**PETER DIMITROV MIRCHEV,**

**ELISHA ODHIAMBO ASUMO,**

**MICHAEL KATUNGI MPEIRWE,**

and

**SUBIRO OSMUND MWAPINGA,**

at least one of whom is expected to be brought first to and arrested in the Eastern District of Virginia, did knowingly conspire with each other and others, both known and unknown to the Grand Jury, to provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), namely, weapons, including firearms and destructive devices, and false documentation, including End-User Certificates and Delivery Verification Protocols, to a foreign terrorist organization—namely, the Cartel de Jalisco Nueva Generación ("CJNG")—knowing that the CJNG was an organization that engages and has engaged in terrorist activity and that the CJNG engages and has engaged in terrorism.

(In violation of Title 18, United States Code, Sections 2339B and 3238.)

## FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE FOR FORFEITURE, AS DESCRIBED BELOW:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that upon conviction of offense set forth in Counts One and Three of this Indictment, they shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property real or personal, which constitutes or is derived from proceeds traceable to the offense; and pursuant to 18 U.S.C. § 981(a)(1)(G) and 28 U.S.C. § 2461(c), the following: (1) all assets, foreign or domestic, of any individual, entity, or organization engaged in planning or perpetrating the violation against the United States, citizens or residents of the United States, or their property and all assets, foreign or domestic, affording a source of influence over any such entity or organization; (2) all assets, foreign or domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting, or concealing the violation against the United States, citizens or residences of the United States, or their property; (3) all assets, foreign and domestic, derived from, involved in, or used or intended to be used to commit the violation against the United States, citizens or residents of the United States, or their property; and (4) all assets, foreign and domestic, of any individual, entity, or organization engaged in planning or perpetrating any act of international terrorism against any international organization or against any foreign Government.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that, if convicted of the offense set forth in Count One of this Indictment, they shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), the following: (1) any property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as the result of such offense and (2) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that, if convicted of any offense set forth in this Indictment, they shall forfeit to the United States, pursuant to Title 18, United States Code, Section 942(d)(1), and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in or used in the commission of the offense.

The property subject to forfeiture includes, but is not limited to, the following: all contents in shipping container number HELU2821406 seized in or around July 2024 which includes approximately (50) AK-47 style rifles and any accompanying magazines and ammunition.

Pursuant to Title 21, United States Code, Section 853(p), the defendants shall forfeit substitute property, if, by any act or omission of the defendants, the property referenced above cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(In accordance with Federal Rule of Criminal Procedure 32.2(a); Title 21, United States Code, Sections 853(a) and 970; Title 18, United States Code, Sections 924(d), 981(a)(1)(C), and 981(a)(1)(G); and Title 28, United States Code 2461(c).)

A TRUE BILL:

Pursuant to the E-Government Act, The original of this page has been filed under seal in the Clerk's Office

FOREPERSON OF THE GRAND JURY

Erik S. Siebert
United States Attorney

By: Anthony T. Aminoff
Edgardo J. Rodriguez
Assistant United States Attorneys

16