IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SUBIRO OSMUND MWAPINGA | CASE NUMBER: 1:25-CR-102 (AJT)<br><br>AFFIDAVIT IN SUPPORT<br>OF REQUEST FOR<br>EXTRADITION |

I, Edgardo J. Rodriguez, being duly sworn, depose and state:

1. I am a citizen of the United States and a resident of the Commonwealth of Virginia.

2. I graduated from Stetson University College of Law in 2017. From 2023 to the present, I have been employed by the United States Department of Justice as an Assistant United States Attorney for the Eastern District of Virginia. My duties are to prosecute persons charged with criminal violations of the laws of the United States. During my practice as an Assistant United States Attorney, I have become knowledgeable about the criminal laws and procedures of the United States.

3. As an Assistant U.S. Attorney for the Eastern District of Virginia, I am responsible for the preparation and prosecution of criminal cases. Based upon my training and experience, I am an expert in the criminal laws and procedures of the United States.

4. In the course of my duties, I have become familiar with the charges and evidence in the case of SUBRIO OSMUND MWAPINGA (MWAPINGA) and his codefendants, entitled <u>United States of America v. SUBIRO OSMUND MWAPINGA, et al.</u>, Case Number 1:25-CR-102 (AJT) (also referred to as 1:25-CR-102). This prosecution arose from an investigation by the United States Drug Enforcement Administration (DEA), which revealed that from September 2022 and continuing through the date the indictment was returned on April 10,

1

2025, MWAPINGA, a citizen of the United Republic of Tanzania, conspired with others to knowingly supply and attempt to supply a drug trafficking and designated foreign terrorist organization in Mexico, namely, the Cartel de Jalisco Nueva Generación (CJNG), with military-grade weaponry believing that this organization intended to use these weapons in furtherance of its criminal activity, namely, the unlawful importation of cocaine into the United States, and conspired to provide false arms control documentation so as to obfuscate their actions from law enforcement detection.

## PROCEDURAL HISTORY OF THE CASE

5. On December 20, 2024, a criminal complaint was filed in the United States District Court for the Eastern District Virginia charging MWAPINGA with violations of United States criminal laws. The United States District Court for the Eastern District Virginia issued a warrant for MWAPINGA's arrest that same day. On April 10, 2025, a federal grand jury returned an indictment against MWAPINGA, charging MWAPINGA with additional violations of United States criminal laws. An arrest warrant based on the indictment was issued for MWAPINGA on April 10, 2025, and that warrant is outstanding.

<u>The Charging Process</u>

6. Under the laws of the United States, a criminal prosecution may be commenced by the filing of a criminal complaint in a United States District Court. A criminal complaint is a written statement of essential facts constituting an offense charged and is made under oath before a United States Magistrate Judge. A criminal complaint must establish that probable cause exists to believe that an offense has been committed, and that the defendant named in the complaint committed it. If satisfied that the complaint sets forth a sufficient factual basis to establish probable cause, the United States Magistrate Judge orders the issuance of a warrant for the

arrest for the defendant named in the complaint.

7. Regardless of whether a complaint has been filed, and in order to bring the defendant to trial, an indictment or information must be produced. Under United States federal law, a criminal prosecution may commence when a grand jury files an indictment. Institutionally, a grand jury, though an arm of the court, is an independent body composed of private citizens—not less than 16 and not more than 23 people—whom the United States District Court selects at random from the residents of the judicial district in which the court resides. The purpose of the grand jury is to review the evidence of crimes presented to it by United States law enforcement authorities. After independently reviewing this evidence, each member of the grand jury must determine whether there is probable cause to believe that a crime has been committed and that a particular person committed that crime. If at least 12 jurors find that the evidence they have reviewed provides probable cause to believe that a particular person committed the crime, the grand jury may return an indictment. An indictment is a formal written accusation that charges the particular person, now a defendant, with a crime, identifies the specific laws that the defendant is accused of violating, and specifies the date and place where the charged crime occurred.

8. The grand jury initiates the criminal prosecution when it files the indictment with the United States District Court. Thereafter, the clerk of the court, at the direction of a United States District Judge or Magistrate Judge, normally issues a warrant for the defendant's arrest in accordance with United States law.

9. In addition to imprisonment and a criminal fine, depending on the charged offense, United States law provides for the seizure and forfeiture of property of the defendant that constitutes the proceeds of the offense or that facilitates such offense. A criminal forfeiture may be

alleged in an indictment, and merely provides notice to the defendant of the government's intention to forfeit property associated with the offense and is not a separate criminal offense. If specific property is listed in the forfeiture allegation, the grand jury must find probable cause to believe that the property is forfeitable. Upon a showing of probable cause, a United States District Court Judge or Magistrate Judge may issue a seizure warrant for the seizure of the property.

10. On April 10, 2025, shortly after completion of the investigation, a grand jury sitting in Alexandria, Virginia, returned an indictment charging MWAPINGA with criminal offenses against the laws of the United States and filed this indictment with the United States District Court for the Eastern District Virginia. It is the practice of the United States District Court for the Eastern District of Virginia to retain the original indictment and file it with the records of the court. Therefore, I have obtained a copy of the indictment from the clerk of the court and attached it to this affidavit as **Exhibit A**.

The Warrant of Arrest

11. On April 10, 2025, based on the indictment filed by the grand jury and with the approval of the United States District Court for the Eastern District of Virginia, a deputy clerk of the court issued a warrant of arrest for MWAPINGA. Pursuant to Rule 9 of the Federal Rules of Criminal Procedure, the clerk of the court is the authority competent to sign arrest warrants and deliver them for execution to law enforcement authorities competent to make arrests. This function "to sign and deliver arrest warrants" also resides in, and is appropriately, customarily, and lawfully exercised by, deputy clerks of the court. In fact, in nearly every case in this district, a deputy clerk, and not the appointed clerk, signs and delivers arrest warrants. It is the practice of the United States District Court of the Eastern District of

Virginia to retain the original arrest warrant and file it with the records of the court. Therefore, I have obtained a copy of the arrest warrant from the clerk of the court and attached it to this affidavit as **Exhibit B**. The warrant remains valid and executable to apprehend MWAPINGA to stand trial for the crimes with which he is charged in the indictment.

## THE CHARGES AND PERTINENT UNITED STATES LAW

12. The indictment charges that MWAPINGA, and others, committed the following offenses:

    Count 1: Conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine,[1] knowing, intending, and having reasonable cause to believe that it would be unlawfully imported into the United States, and aiding and abetting the same, in violation of Title 21, United States Code (U.S.C.), Sections (§§) 959(a), 960(a)(3), 960(b)(1)(B), 963, and 18 U.S.C. § 2. The maximum penalty for this offense is life imprisonment.[2]

    Count 2: Conspiracy to possess firearms, including a machinegun and destructive device, and aiding and abetting the same, in furtherance of a drug trafficking crime, in violation of Title 21, United States Code, Section 963, and Title 18, United States Code, Sections 924(c) and (o), and 2. The maximum penalty for this offense is life imprisonment.

    Count 3: Conspiracy to provide material support or resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. The maximum penalty for this offense is 20 years in prison.

---

[1] Cocaine is a Schedule II controlled substance, pursuant to 21 U.S.C. § 812(c).
[2] All three counts are also charged under 18 U.S.C. § 3238, which is a statutory section allowing prosecution to take place in the federal district to which the defendant is first brought in the United States for extraterritorial criminal conduct.

13. The United States requests the extradition of MWAPINGA for these offenses. Each count charges a separate offense. Each offense is punishable under a statute that (1) was the duly enacted law of the United States at the time the offense was committed, (2) was the duly enacted law of the United States at the time the indictment was filed, and (3) is currently in effect. Each offense is punishable under United States law by more than one year of imprisonment. Copies of the pertinent sections of these statutes are included in the relevant legal provisions attached as **Exhibit C**.

Conspiracy

14. Counts 1, 2, and 3 are conspiracy violations. Under United States law, a conspiracy is simply an agreement to violate another criminal statute, in this case, the statutes prohibiting importation of cocaine, the illegal possession of firearms in furtherance of drug trafficking, and the provision of material support or resources to a designated foreign terrorist organization. Under United States law, the act of combining and agreeing with one or more persons to violate a law of the United States is a crime in and of itself. The agreement on which the conspiracy is based need not be written or even verbal. It may be simply a tacit understanding by two or more persons to do something illegal. The conspirators enter into a partnership for a criminal purpose in which each member or participant becomes a partner or agent of every other member.

15. A person may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the identities of all the other members of the conspiracy. If a person has an understanding of the unlawful nature of a plan and knowingly and willfully agrees to it, joining in the plan, that is enough to convict him for conspiracy even though he did not participate previously and/or played only a minor part. In fact, a conspirator can be held

criminally responsible for all reasonably foreseeable actions undertaken by other conspirators in furtherance of the criminal partnership.

16. Moreover, because of this partnership, statements made by a conspirator in the course of and while he is a member of the criminal conspiracy are admissible in evidence not only against that conspirator, but also against all other members of the conspiracy. This is so because, as stated earlier, a conspirator acts as an agent or representative of the other conspirators when he is acting in furtherance of their illegal scheme. Therefore, statements of conspirators made in furtherance of the conspiracy may be deemed to be the statements of all conspirators.

17. Under United States law, the crime of conspiracy is an independent offense, separate and distinct from the commission of any specific "substantive crimes." Consequently, a conspirator can be found guilty of a crime of conspiracy to commit an offense even where the substantive crime that was the purpose of the conspiracy is not committed. The Congress of the United States has deemed it appropriate to make conspiracy, standing alone, a separate crime, even if the conspiracy is not successful, because collective criminal planning poses a greater threat to the public safety and welfare than individual conduct and increases the likelihood of success of a particular criminal venture.

Count 1

18. Count 1 charges MWAPINGA with conspiracy to commit substantive offenses against the United States, specifically, to import cocaine into the United States from a place outside the United States in violation of 21 U.S.C. § 959(a), 960(a)(3), 960(b)(1)(B), 963 and 18 U.S.C. § 2. A person who aids and abets the commission of a crime—in this instance the importation of cocaine into the United States—is as guilty as the person who actually performs the criminal act. Conspiracy to import cocaine is a conspiracy for which the United States may

extradite under its laws. The maximum penalty for a conspiracy to import cocaine is life imprisonment.

19. To satisfy its burden of proof to convict MWAPINGA on Count 1, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that two or more persons entered an agreement to commit the underlying offense of distribution of a mixture and substance containing a detectable amount of cocaine knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States; (2) that MWAPINGA knowingly became a member of the conspiracy to commit the underlying offense; and that (3) MWAPINGA acted with the intention of causing the crime to be committed.

    a. For the underlying substantive offense of distributing a mixture and substance containing cocaine, in violation of 21 U.S.C. 959(a), the elements are: (1) that there was an unlawful agreement between two or more persons to knowingly and intentionally distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, which is a controlled substance under 21 U.S.C. § 841(b)(1)(A)(ii)(II); (2) knowing, intending, and having reasonable cause to believe that such substance would be unlawfully imported into the United States; (3) that the participants knew of this agreement; (4) that the participants knowingly and voluntarily became part of the agreement; and (5) that the minimum weight of the controlled substance that the participants distribute was as reflected in the charged Indictment, here, five kilograms or more of a mixture and substance containing a detectable amount of cocaine.

20. The United States, at trial, will establish these elements primarily through the testimony of cooperating witnesses and corroborating evidence including travel records, bank statements, and other physical evidence, such as the seizure of weapons sold under false documents MWAPINGA provided.

Count 2

21. Count 2 charges MWAPINGA with conspiracy to aid and abet possession of firearms, including a machinegun and destructive device, in furtherance of a drug importation conspiracy, in violation of Title 21, United States Code, Section 963, and Title 18, United States Code, Sections 924(c) and (o), and 2. Conspiracy to possess firearms, including a machinegun and destructive device, in furtherance of a drug importation conspiracy is a conspiracy for which the United States may extradite under its laws. The maximum penalty for conspiracy to possess firearms, including a machinegun and destructive device, in furtherance of a drug trafficking crime is life imprisonment.

22. A "machinegun" is defined by 26 U.S.C. § 5845(b) as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." A "destructive device" is defined by 26 U.S.C. § 5845(f) is defined as "(1) any explosive, incendiary, . . . (A) bomb, (B) grenade, (C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projective by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter . . .; and (3) any

combination of parts either designed or intended for use in converting any device into a destructive device . . . and from which a destructive device may be readily assembled."

23. To satisfy its burden of proof and convict MWAPINGA on this count, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that MWAPINGA knew the underlying substantive offense of knowing and intentional possession of a machinegun or destructive device in furtherance of a drug importation crime was to be committed or was being committed; (2) that MWAPINGA knowingly and voluntarily joined the conspiracy for the purpose of aiding, abetting, or encouraging the crime; and (3) he acted with the intention of causing the crime to be committed.

    a. For the underlying substantive offense of using or possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 US.C. § 924(c), the elements are: (1) that there was an unlawful agreement between two or more persons to knowingly and intentionally possess a machinegun or destructive devices in furtherance of a drug trafficking crime, which includes violations of 21 U.S.C. §§ 959(a) and 963; (2) that the participants knew of this agreement; and (3) the participants knowingly and voluntarily became part of the agreement.

24. The United States, at trial, will establish these elements primarily through the testimony of cooperating witnesses and corroborating evidence such as travel records, bank statements, and other physical evidence, such as the seizure of weapons sold under false documents provided by MWAPINGA.

Count 3

25. Count 3 charges MWAPINGA with conspiracy to provide material support or resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. Conspiracy to

provide material support or resources to a designated foreign terrorist organization is a conspiracy for which the United States may extradite under its laws. The maximum penalty for the offense of conspiracy to provide material support or resources to a designated foreign terrorist organization is 20 years in prison.

26. To satisfy its burden of proof and convict MWAPINGA on this count, the government, at trial, must establish beyond a reasonable doubt each of the following essential elements: (1) that MWAPINGA engaged in a conspiracy with two or more persons, the object of which was to provide material support or resources to a designated foreign terrorist organization; (2) that MWAPINGA knowingly and voluntarily joined the conspiracy for the purpose of aiding, abetting, or encouraging the crime; (3) that MWAPINGA acted with the intention of causing the crime to be committed; and (4) that MWAPINGA knew that the organization was a designated foreign terrorist organization or that the organization had engaged or was engaged in terrorist activity or terrorism.

   a. For the underlying substantive offense, the elements are: (1) that MWAPINGA knowingly provided or attempted to provide material support or resources to a foreign terrorist organization and (2) that MWAPINGA knew that the organization was designated as a foreign terrorist organization or knew that the organization engages or has engaged in terrorism or terrorist activity.

27. Under 18 U.S.C. § 2339B(g)(4), "material support or resources" is defined by 18 U.S.C. § 2339A as meaning, among other things, false documentation, weapons, and explosives.

28. Under 18 U.S.C. § 1182(a)(3)(B), a person or organization that is a member of a foreign terrorist organization, as so designated by the United States Secretary of State, can be said to "have engaged in terrorist activity" as contemplated by 18 U.S.C. § 2339B.

29. Under 22 U.S.C. § 2656f(d)(2), "terrorism" is defined as premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents.

30. On February 20, 2025, the United States Secretary of State designated the CJNG as a Foreign Terrorist Organization pursuant to 8 U.S.C. § 1189, and it remains so designated today.

31. The United States, at trial, will establish these elements primarily through the testimony of cooperating witnesses and corroborating evidence including travel records, bank statements, and other physical evidence, such as the seizure of weapons sold under false documents provided by MWAPINGA.

Statute of Limitations

32. The statute of limitations applicable to the offenses charged in Counts 1 and 2 is 18 U.S.C. § 3282, which allows prosecution to commence within five years after the offenses were committed. The statute of limitations applicable to Count 3 is 18 U.S.C. § 3286, which allows prosecution to commence within eight years of the date on which the offense was committed. Once an indictment has been filed in a federal district court, as with the charges against MWAPINGA, the statutes of limitations are tolled and no longer run. Copies of these statutes are included as part of **Exhibit C**.

33. The statute of limitations runs from the accomplishment of the objectives of the conspiracy or from its abandonment.

34. I have thoroughly reviewed the applicable statutes of limitation. Since the applicable statute of limitations is five years for Counts 1 and 2 and eight years for Count 3; the offenses occurred on from September 2022 continuing through the date the indictment was returned;

and the indictment was filed on April 10, 2025, MWAPINGA was formally charged within the prescribed time periods.

35. MWAPINGA has not been tried or convicted for the offense charged in the indictment, nor has he been ordered to serve any sentence in connection with this case.

## SUMMARY OF THE FACTS

36. Beginning around 2021 and continuing to the present, U.S. authorities have been investigating the arms trafficking activities of MWAPINGA and his codefendants. This investigation has revealed that MWAPINGA and his codefendants have attempted and are attempting to supply military-grade weapons to the CJNG. The CJNG is arguably the most prolific and violent drug trafficking organization in Mexico today, and it is responsible for trafficking in multi-ton quantities of illegal drugs, including cocaine, to the United States and Europe every year

37. In addition to MWAPINGA's assistance with an attempted sale of weapons to the CJNG, MWAPINGA and his codefendants have each agreed to assist the sale of even larger quantities of military-grade weaponry to the CJNG in future transactions. To avoid detection by U.S. and international law enforcement, MWAPINGA and his codefendants obtain fraudulent arms control documents from their respective countries that act as a cover for illicit arms trafficking.

38. For example, on or about July 27, 2024, one MWAPINGA codefendants attempted to supply 50 AK-47 automatic assault rifles to individuals claiming to be affiliated with the CJNG. To provide cover for the illegal sale, this codefendant recruited MWAPINGA and others throughout Africa who provide fraudulent End-User Certificate and Delivery Verification Protocol documents. These documents claimed that the weapons were sold to the

government of Tanzania, when in fact the weapons were intended for the CJNG. Greek authorities subsequently seized the weapons in Greece working in cooperation with U.S. law enforcement.

39. MWAPINGA intended to supply the CJNG with weaponry despite extensive, lawfully recorded communications in which he and his codefendants indicated that they understood that the CJNG was involved in large-scale trafficking of illegal drugs into the United States and Europe, and that the CJNG intended to use these weapons to further their drug trafficking activities.

40. Following the July 2024 weapons deal, MWAPINGA and his codefendants continued to arrange future weapons transactions intended for the CJNG. For example, MWAPINGA and his codefendants have offered to assist with the sale to the CJNG of the ZU-23 anti-aircraft weapon system, an anti-aircraft weapon that fires 23x152mm rounds and is designed to shoot down low-flying targets such as helicopters; rocket propelled grenades; drones equipped with grenade launchers; and night vision equipment. These weapons would cause catastrophic loss of life if they were to end up in the hands of the CJNG.

41. Additional facts are presented in more detail in the affidavit of Drug Enforcement Administration (DEA) Special Agent Thomas P. McLaughlin, which is attached to this affidavit as **Exhibit D**.

## IDENTIFICATION AND LOCATION INFORMATION

42. SUBIRO OSMUND MWAPINGA is a citizen of the United Republic of Tanzania, born on October 20, 1980, in Tanzania. He is described as a balding Black male with dark eyes. He holds Tanzanian passport number TAE626262. At the request of the United States, Ghanaian

authorities provisionally arrested MWAPINGA on April 8, 2025, shortly after his arrival at Kotoka International Airport that day.

43. A photograph of MWAPINGA is attached to Special Agent McLaughlin's affidavit and made part of this extradition request. This photograph has been identified as MWAPINGA by a DEA confidential source, who is familiar with MWAPINGA through interactions with him in this investigation.

## CONCLUSION

44. I have attached to this affidavit the following documents:

    **Exhibit A:**   Certified Copy of Indictment

    **Exhibit B:**   Certified Copy of Arrest Warrant

    **Exhibit C:**   Relevant Legal Provisions

    **Exhibit D:**   Affidavit of DEA Special Agent Thomas P. McLaughlin

    **Attachment 1:** Photograph of MWAPINGA

45. This affidavit, including its exhibits, contain sufficient evidence to support the request of the United States of America that MWAPINGA be extradited from the Republic of Ghana to the United States of America, Eastern District of Virginia, for prosecution for the offenses described above and that he be detained pending the determination of his extradition, including any appeal.

46. This affidavit and the affidavit of DEA Special Agent Thomas P. McLaughlin were each sworn to before a United States Magistrate Judge for the Eastern District of Virginia, who is a person authorized to administer an oath for this purpose.

*Edgardo Rodriguez*
EDGARDO J. RODRIGUEZ
ASSISTANT UNITED STATES ATTORNEY
EASTERN DISTRICT OF VIRGINIA

Sworn and subscribed to before me this 23rd day of April 2025.

HON. IVAN D. DAVIS
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF VIRGINIA

# Exhibit List

**Exhibit A**  Certified Copy of Indictment

**Exhibit B**  Certified Copy of Arrest Warrant

**Exhibit C**  Relevant Statutes (or "Relevant Legal Provisions" if it includes other law)

**Exhibit D**  Affidavit of Drug Enforcement Administration Special Agent Thomas P. McLaughlin

        Attachment 1: Photograph of Subiro Osmund Mwapinga